# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATHLEEN BOYLE, as Executor of the Estate of Karen M. Catlin, Deceased, and Successor Trustee Under the Karen M. Catlin Trust dated August 6, 1998,<br><br>        Plaintiff,<br><br>        v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, a corporation, LIBERTY MUTUAL EMPLOYEE BENEFIT PLAN, and AETNA US HEALTHCARE,<br><br>        Defendants,<br><br>        and<br><br>ALDEN-POPLAR CREEK REHABILITATION AND HEALTH CARE CENTER, INC.,<br><br>        Respondent in Discovery. | Case No. 06 C 3916<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Defendants' Motion to Remand for Completion of Administrative Review. For the following reasons, the Motion is granted. This action is stayed and this matter is remanded to the Plan Administrator to allow the parties to complete administrative review of Plaintiff's claim for benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Kathleen Boyle (hereinafter, "Boyle"), is the Executor of the Estate of Karen M. Catlin, deceased (hereinafter, "Catlin"), and Successor Trustee under the Karen M. Catlin Trust. Compl. ¶¶ 1-2. Catlin was employed by Wausau Insurance Company ("Wausau") for about fifteen years prior to 1999. *Id.* ¶ 10. Wausau merged with Liberty Mutual Insurance Company (hereinafter, "Liberty Mutual" or "Plan Provider" or "Plan Administrator") effective January 1, 1999, and former Wausau employees became eligible for coverage under the Liberty Mutual Medical Plan (the "Plan") effective January 1, 2000. *Id.* ¶¶ 10-12. Aetna Life Insurance Company ("Aetna") administered the Plan for Liberty Mutual and is the Claims Administrator for the non-HMO plan option. *See id.* ¶ 5. Claims are initially determined by Aetna and, if denied, may be appealed to the Plan Administrator, Liberty Mutual.

The Plan provides that to claim benefits, an employee is to "complete[] [her] claim form and attach[] [her] itemized bill or original receipt, [and] mail the form directly to the claims administrator [Aetna] at the address shown on the form. Medical bills must be on the doctor's bill form or letterhead, fully itemized with patient's name, dates of treatment, kinds of treatment. . . . Claims must be submitted within two years from the date that charges are incurred, unless they are delayed by the claimant's legal incapacity, or they will not be paid." *Id*. at

B-40.  Moreover, a claim for benefits or an appeal may be filed through an "authorized representative."  *Id.* at B-50.  The Plan also provides that for post-service claims, "you will be notified of the decision not later than 30 days after receipt of the claim.  The time frames . . . begin at the time a claim is filed, without regard to whether all the information necessary to make a decision accompanies the filing."  *Id.*  These time periods:

> may be extended . . . due to circumstances outside the plan's control. . . . If the extension is necessary because of failure to submit sufficient information, you will be notified of the specific information necessary and given an additional period of at least 45 days to furnish that information.  In such case, the decision-making period is tolled or suspended from the date the extension notice is sent *until the earlier of the date the additional information is received or the end of the 45-day period*.  You will be notified of the claim decision no later than 15 days after the end of that additional 45-day period or after receipt of the information, if earlier.

*Id.* (emphasis added).

The Plan provides that if a claim is denied, the claimant will receive "a written notice of denial" containing specific information such as the reason for denial and reference to specific provisions on which the denial is based.  A claimant has "180 days following receipt of an adverse benefit decision to appeal the decision in writing to the Plan Administrator," and "[y]ou will be notified of the decision, assuming one level of review, not later than . . . 60 days (for post-service claims) after the appeal is received."  *Id.* at B-51.

Catlin suffered from Lou Gehrig's disease, was unable to continue employment, and became a patient at Alden-Poplar Creek Rehabilitation and Health Care Center, Inc. ("Alden") beginning on December 16, 1999. *Id.* ¶¶ 14, 17. By letter dated December 22, 1999, the Wausau benefits department confirmed a negotiated rate for skilled nursing facility services for Catlin at $269.20. Ex. B to Compl. Catlin remained at Alden until her death on July 25, 2004. Compl. ¶ 17.

Plaintiff alleges that an Alden's representative informed her that Aetna refused to pay charges at Alden, and that as a result, she obtained a loan to pay for Catlin's treatment at Alden. *Id.* ¶¶ 21-22. In this lawsuit, Plaintiff seeks reimbursement under the Plan for charges incurred at Alden for Catlin's care. *See id.* ¶¶ 23-27.

Plaintiff's counsel's April 8, 2005 letter to Liberty Mutual was the first time she inquired about or claimed benefits for skilled nursing facility charges incurred at Alden. *Id.* ¶ 35. She asked to be reimbursed at the Wausau-negotiated rate of $269.20 per day. *See* Ex. E to Defs.' Mem. Liberty Mutual responded by letter dated July 8, 2005, wherein it advised that any medical claims incurred as of January 1, 2000 can be submitted to Aetna. *See* Ex. F to Defs.' Mem. In a letter to Aetna dated July 22, 2005, Plaintiff's counsel demanded reimbursement at a rate of $269.20 per day for the 100 days per calendar year covered by the Plan. *See*

Ex. G to Defs.' Mem. Counsel stated, "We are informed that Alden's made a claim for its charges as a Skilled Nursing Facility which was not paid. We do not have the particulars concerning the claim or Liberty Mutual's (or the medical insurer's) response to the claim." *Id.* at 1. Enclosed with the letter were a copy of Wausau's December 22, 1999 letter and a copy of the Plan provisions.

Aetna responded by letter dated August 3, 2005, stating that "[a]fter reviewing Karen's claim history, it was determined that we have not received the claims from Alden's Poplar Creek for dates of service December 17, 1999 through July 25, 2004," and that "we are not able to process the claims using the information you provided. Therefore, we need the provider submit [*sic*] the eligible itemized bills to the address listed above. There is a 2 year and 90 day timely filing limit from the date of service." Ex. H to Defs.' Mem. Plaintiff's counsel responded in a letter dated August 16, 2005, arguing that the "2 year and 90 day timely filing limit" did not apply because "we understand that Aetna paid for a few days of skilled nursing facility charges, and thereafter denied the provider's further charges and claims, thereby foregoing any purported requirement that the provider file further claims for such charges arising after the denial." Ex. I to Defs.' Mem. at 1. Counsel stated, "We have sought and intend to present the facts to establish the above in due course. To date, the provider has not

furnished us with documents supporting the information given to us verbally" and "[w]e have requested that the provider furnish documents to reflect its charges, which will be furnished to you in due course after we receive them." *Id.* at 1-2.

On September 7, 2005, Plaintiff's counsel had a telephone conversation with an Aetna case manager, who requested a copy of the July 8, 2005 letter to Liberty Mutual as well as documents related to the Catlin Trust. *See* Ex. J to Defs.' Mem. On September 8, 2005, Aetna sent a letter to counsel along with a report containing medical, pharmacy, Long Term Care, and other claims made on behalf of Catlin. *See* Ex. K to Defs.' Mem. This report did not contain any information concerning Alden's charges, but Aetna stated that if Plaintiff believed the report was incomplete or incorrect, she could so state in writing. In a letter dated September 28, 2005, Plaintiff's counsel asserted that the report was "incomplete" and maintained that "[w]e are informed that claims were made and paid by the Liberty Mutual employee medical plan for skilled nursing facilities at Alden Poplar Creek for December 1999 and thereafter declined. Alden advised that it will require about 30 days to re-produce [*sic*] the claim and payment documentation, which, if not destroyed, is located in a storage warehouse." Ex. L to Defs.' Mem. at 1. In support of Catlin's claim, the letter stated that it enclosed hundreds of pages of assorted medical records from Alden, such as those

"regarding initial admission, medications, periodic assessments and care, . . . treatment . . . [and] records of physicians Orders in treating Karen." *Id.* at 2. Billing records were not included. Counsel asserted that "[t]he enclosed records establish beyond any reasonable doubt that Alden provided medical treatment for Karen on each and every day of her hospitalization at Alden," and that this treatment was medically necessary. *Id.* This was Plaintiff's final letter to Aetna before filing suit.

On April 5, 2006, Plaintiff's counsel sent a letter to Liberty Mutual stating:

> In September 2005, we made a final demand on Aetna and transmitted a copy of Alden's records which we were able to obtain from Alden's per letter dated September 28, 2005 . . . We have received no response to our letter to Aetna of September 28, 2005, . . . we have not received a denial of the claim or any part of the claim and there has been no indication that anyone has an interest in discussing settlement. . . . This letter is being dispatched to you because of your action in disposing of the request for interest on the life insurance claim of Karen. We sense that you have the authority to use good judgment in considering and evaluating claims and to dispose of claims in the best interests of your company and claimants. . . . Unless payment is received or a satisfactory settlement is reached before the end of May 2006, we will start a lawsuit in June 2006.

Ex. N of Defs.' Mem. 2-3. In response, Liberty Mutual sent a letter dated June 8, 2006 stating that "Aetna conducted a review of Karen's claims and found that they have not received any Alden billing statements. As stated in Paula Kuczynski's letter, in order for Aetna to review the claim under the terms of the Liberty Mutual plan, they will need a copy of the itemized claim submitted

on a UB92 claim. Aetna will provide a claims determination and any adverse benefit decision can be appealed to the Plan Administrator, Liberty Mutual." Ex. Q to Defs.' Mem. This is the first time the need for a UB92 claim is mentioned in the record.

Plaintiff's counsel responded on July 1, 2006, stating that they could not obtain billing documents from Alden and that "we can only assume that Aetna and Liberty Mutual have rejected the claim because of the inability to obtain the statements from Alden's. This rejection took place several months ago." Ex. R of Defs.' Mem. at 1. The letter also stated that "[i]t is hoped that the records sent to you and the supporting documents previously sent to . . . other representatives of Liberty Mutual and of Aetna establish beyond any question the right to recover a minimum of $138,638.00 from Aetna and Liberty Mutual plus interest and attorneys' fees, if the matter is to be litigated." *Id.* at 2. Further, "we suggest that Aetna's refusal to pay the claim because it has not received an 'itemized claim submitted on a UB92 claim' form, is a very tenuous technicality." *Id.*

Among the exhibits that Defendants have attached to their memorandum in support of remand is a letter from Paula Kuczynski at Aetna dated June 9, 2006 to Plaintiff's counsel in response to his letter of September 28, 2005. The letter states that "Wausau . . . indicated that one claim had been submitted to Wausau by Alden for Karen that was denied in 2000. Wausau indicated that no

other claims had been submitted to Wausau by Alden." Ex. S to Defs.' Mem. at 1. The letter states that in order to process Catlin's claim, "Aetna needs a copy of a clean claim submitted on a UB92 claim . . . that contains the following information [listing fields and field descriptions]." The letter also bears the notation "Via Facsimile and Certified Mail." Plaintiff's counsel asserts that he never received this letter and contends that Aetna fabricated it for the purposes of litigation. *See* Ex. T to Defs.' Mem. Aetna admits that it has no proof that this letter was ever sent, but maintains that it was drafted with the intention of being sent. *See* Defs.' Mem. at 8.

Plaintiff filed suit in this Court on July 20, 2006. Defendants Liberty Mutual and Aetna have filed a motion to remand for completion of administrative review.

## II.  DISCUSSION

The ERISA regulations provide:

> . . . the period of time within which a benefit determination is required to be made shall begin at the time a claim is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination accompanies the filing.  In the event that a period of time is extended as permitted . . . due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. § 2560.503-1(f)(4).  Aetna asserts that Plaintiff has not exhausted her administrative remedies because it has never received billing records from Alden necessary to process her claim, and that until it receives such records, Aetna's deadline for issuing a timely claim determination is tolled pursuant to 29 C.F.R. § 2560.503-1(f)(4).  *See* Defs.' Mem. at 9-10.  Plaintiff's counsel repeatedly asserts that Aetna must have received the Alden billing records, although he provides no evidence in support and Alden itself answered "No" in response to an Interrogatory asking "whether Alden made a claim or request for payment for the care, treatment, and maintenance of Karen M. Catlin from Defendants Aetna US Healthcare or Liberty Mutual Employee Benefit Plan ("Liberty Mutual"). . . ."  Ex. O to Defs.' Mem. at 3.

The Plan provides more stringent time limits than 29 C.F.R. § 2560.503-1(f)(4).  It provides that if an extension of time is necessary due to failure to submit necessary information, "you will be notified of the specific information necessary and given an additional period of at least 45 days to furnish that information. In such case, the decision-making period is tolled or suspended from the date the extension notice is sent *until the earlier of the date the additional information is received or the end of the 45-day period*."  Ex. C to Defs.' Mem. at B-50 (emphasis added). Moreover, "[y]ou will be notified of the claim decision no later than 15 days after the end of that additional 45-day period or

after receipt of the information, if earlier." *Id.* Assuming, then, that Aetna's August 3, 2005 letter constituted an extension notice, the decision-making period was tolled until the end of the additional 45-day period, which was September 17, 2005 (or the following Monday, September 19). Aetna should have notified Plaintiff of the claim decision no later than 15 days after that - October 2, 2005 (or the following Monday, October 3).

Aetna did not make a claim decision by the deadline set forth in the Plan. Even so, Plaintiff failed to exhaust her administrative remedies by filing an appeal. *See Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 679-80 (7th Cir. 2002).

The Court rejects Plaintiff's argument that her lawyer's April 5, 2006 letter to Liberty Mutual constituted an appeal. First, "[a]n attorney's letter can be sufficient to initiate administrative review if a reasonable procedure for filing claims has not been established," and Plaintiff has not shown that Aetna had no reasonable procedure for filing claims such that an attorney's letter would suffice. *Powell v. AT&T Communications, Inc.*, 938 F.2d 823, 827 (7th Cir 1991).

Second, "[t]he content of the letter must be reasonably calculated to alert the employer to the nature of the claim and request administrative review," but the April 5, 2006 letter did not state that Plaintiff deemed Aetna to have denied the claim and was thus seeking Liberty Mutual's review of that denial. Instead,

the letter stated that Plaintiff "ha[d] not received a denial of the claim" and that the letter was being sent to Mary Connolly at Liberty Mutual "because of [her] action in disposing of the request for interest on the life insurance claim of Karen" and the hope that she would "have the authority" to dispose of Plaintiff's claim since Plaintiff did not "get anyone's attention at Aetna . . . to come to grips with this claim." Ex. N to Defs.' Mem. at 3. The letter then threatened to sue by June 2006 unless payment or a settlement was made. *See id.* As in *Powell*, this letter "was not an attempt to jump start administrative proceedings, but a threat to take [Defendants] to court if the matter was not settled." *Powell*, 938 F.2d at 827.

### III. CONCLUSION

For the reasons stated herein, the Defendants' Motion to Remand for Completion of Administrative Review is granted. The Plaintiff has not exhausted her administrative remedies because she did not appeal as required by the Plan. This action is stayed and remanded to permit an administrative appeal.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** May 8, 2008