IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHLEEN BOYLE, as Executor of
the Estate of Karen M. Catlin,
Deceased, and Successor
Trustee Under the Karen M.
Catlin Trust dated August 6,
1998,

               Plaintiff,

    v.

LIBERTY MUTUAL INSURANCE
COMPANY, LIBERTY MUTUAL
EMPLOYEE BENEFIT PLAN, and
AETNA US HEALTHCARE,

               Defendants,

      and

ALDEN-POPLAR CREEK
REHABILITATION AND HEALTH CARE
CENTER, INC.

      Respondent in Discovery.

Case No. 06 C 3916

Hon. Harry D. Leinenweber

MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Boyle ("Plaintiff") and Defendants Liberty
Mutual Insurance Company ("Liberty Mutual"), Liberty Mutual Medical
Plan (the "Medical Plan"), and Aetna Life Insurance Company
("Aetna") (collectively, the "Defendants") have filed Cross-Motions
for Summary Judgment with respect to Plaintiff's suit filed
pursuant to the Employee Retirement Income Security Act ("ERISA"),
29 U.S.C. § 1132. Both parties seek summary judgment under Federal
Rule of Civil Procedure 56(c), and, alternatively, Defendants seek

judgment under Federal Rule of Civil Procedure 52(a). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **denied**, and Defendants' Motion for Summary Judgment is **granted**.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A. **Parties**

Plaintiff is the Executor of the Estate of Karen M. Catlin, deceased ("Catlin"), and Successor Trustee under the Karen M. Catlin Trust. Catlin was a former employee of the Wausau Insurance Company ("Wausau"), which was acquired by Liberty Mutual effective December 31, 1999. Defs.' Statement of Facts ("Defs.' SOF") ¶ 4; Pl.'s Statement of Facts ("Pl.'s SOF") ¶ 48. Former Wausau employees became eligible for coverage under the Liberty Mutual Medical Plan effective January 1, 2000. Aetna administers the Medical Plan for Liberty Mutual and is the Claims Administrator for the non-HMO plan option. Claims are initially determined by Aetna and, if denied, may be appealed to the Plan Administrator, Liberty Mutual. Defs.' SOF ¶ 15.

After Liberty Mutual and Wausau merged, Catlin enrolled in the Medical Plan's $1,000 Deductible Option, one of Liberty Mutual's self-insured, non-HMO options. *Id.* at ¶ 8. Prior to the merger, Catlin was enrolled in the Wausau medical plan, which was administered by Nationwide Insurance Company. *Id.* The parties dispute the date that Catlin's coverage under Liberty Mutual's Medical Plan became effective. Defendants assert that her coverage

- 2 -

began January 1, 2000, and Plaintiff argues that her coverage began prior to that date. Based on the Court's ruling on the parties' motions and its reasoning, *see infra*, this dispute is immaterial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The record demonstrates, however, that Catlin was covered by Wausau's medical plan until December 31, 1999, and that her coverage under Liberty Mutual's Medical Plan began January 1, 2000. *See* Defs.' SOF ¶ 8; Post-Remand Admin. R. ("PRAR") RMD001880 (Dec. 22, 1999 Letter from Wausau); PRAR DEF 000004 (June 9, 2006 Letter from Aetna); PRAR RMD002441-62 (Aetna Case Summary).

At all times relevant to this matter, Catlin suffered from Amyotrophic Lateral Sclerosis ("ALS"). Defs.' SOF ¶ 5. In 1998, Catlin executed a Power of Attorney, delegating extensive authority to her attorney, including authority to apply for, receive, and exercise any right to elect benefits and to commence, pursue, or oppose legal proceedings on her behalf. PRAR DEF000017-20 ("Power of Attorney"). On December 16, 1999, Catlin was admitted as a resident of Alden-Poplar Creek Rehabilitation and Health Care Center, Inc. ("Alden"). Defs.' SOF ¶ 9; Pl.'s SOF ¶ 10. By a letter dated December 22, 1999, the Wausau benefits department confirmed a rate for skilled nursing facility services for Catlin at $269.20 per day. PRAR RMD001880 (Dec. 22, 1999 Letter from Wausau) (providing that "CERTIFICATION DOES NOT GUARANTEE BENEFITS. PAYMENT MAY BE SUBJECT TO ELIGIBILITY AND PLAN BENEFITS."). Except

for a few days of hospitalization, Catlin remained at Alden until her death on July 25, 2004.  Defs.' SOF ¶ 9; Pl.'s SOF ¶ 10.

## B.  The Medical Plan

The Liberty Mutual Medical Plan provides for certain "covered medical expenses," subject to other terms and provisions in the Medical Plan, including a maximum 100-day per year benefit for:

> (4) [c]harges made by a skilled nursing facility for treatment rendered while confined:
>
> > (a)  in lieu of a hospital confinement; or
> >
> > (b)  within 24 hours following hospital confinement and for the same or related cause(s) as such hospital confinement.

PRAR RMD000426-80 (Medical Plan), at B-24 & B-25.  The Medical Plan defines "skilled nursing facility" as:

> a lawfully operating institution engaged mainly in providing treatment for people convalescing from injury or sickness.  It must have:
>
> > (a)  organized facilities for medical services; and
> >
> > (b)  24-hour nursing service by Registered Nurses; and
> >
> > (c)  a capacity of six or more beds; and
> >
> > (d)  daily medical records for each patient; and
> >
> > (e)  a physician available at all times.

*Id.* at B-23 & B-24.  The definition of skilled nursing facility specifically excludes "places for custodial care."  *Id.*  The Medical Plan also specifies that "charges for custodial care" do

- 4 -

not qualify as a "covered medical expense." *Id.* at B-33. The Medical Plan defines "custodial care" as:

> a level of routine maintenance or supportive care, whether provided in the home or in an institution or other facility, which need not be provided by skilled professional medical personnel and will include, but not be limited to, care designed to assist the covered person in the activities of daily living.

*Id.* at B-20.

The Medical Plan provides that, in order to claim benefits, medical claims must be submitted "within two years from the date that charges are incurred, unless they are delayed by the claimant's legal incapacity, or they will not be paid." *Id.* at B-40.

### C. Initial Contacts between Plaintiff, Liberty Mutual, and Aetna

On April 8, 2005, in correspondence addressed to Liberty Mutual, Plaintiff's counsel inquired about reimbursement for a portion of Alden charges related to Catlin's care under the Medical Plan's skilled nursing facility provision. PRAR RMD002344-48 (Apr. 8, 2005 Letter from M. Metge). Liberty Mutual responded, directing Plaintiff to submit any medical claims to Aetna. PRAR RMD002338 (July 8, 2005 Letter from Liberty Mutual). Plaintiff's counsel then submitted the claim to Aetna, but Aetna did not process it and made no claims determination related to this matter, citing the claimant's failure to provide sufficient documentation. PRAR RMD002024 (Aug. 3, 2005 Letter from Aetna); PRAR RMD000003

(June 8, 2006 Letter from Liberty Mutual); PRAR RMD002470-71 (Kucyznski Aff. ¶¶ 6-9). Likewise, because Aetna entered no adverse claims decision, Liberty Mutual made no decision regarding any appeal.

### D. Litigation and Post-Remand Administrative Activity

Plaintiff commenced this litigation on July 20, 2006. On May 8, 2008, the Court remanded the matter back to Liberty Mutual for completion of the administrative review process.

Thereinafter, Plaintiff's counsel submitted a Notice of Appeal to Liberty Mutual and designated specific documents to be considered. Pl.'s SOF ¶¶ 1-4. By correspondence dated June 27, 2008, Liberty Mutual acknowledged the appeal and advised Plaintiff that it was seeking Aetna's assistance with the review. PRAR RMD002483 (June 27, 2008 Letter from Liberty Mutual). Specifically, Liberty Mutual requested that Aetna "review and analyze" materials identified by Plaintiff and/or Liberty Mutual, and other materials that it deems appropriate, and provide a recommendation to Liberty Mutual regarding the claim. PRAR RMD002480-82 (July 2, 2008 Letter from Liberty Mutual). Liberty Mutual instructed Aetna that this review must be "conducted only by persons without any prior involvement in this claim" or subordinates of such persons. *Id.*

In a report dated September 17, 2008, Linda O'Bannon, M.D., an Aetna medical director with expertise in the field of internal

medicine, recommended that Plaintiff's claim be denied as "custodial treatment" and not a covered medical expense. PRAR RMD002426 (Sep. 17, 2008 Aetna Medical Director Review Report). In relevant part, Dr. O'Bannon explained:

> Catlin's "care consisted of feeding and complete care with activities of daily living. She was also monitored for skin breakdown and bowl status and medications were administered. Based on the information provided, the services rendered were custodial in nature and did not meet the criteria outlined in *Milliman Care Guidelines ® Inpatient General Recovery Guidelines*, 9th Edition: Medical Admission Recovery Facility Care GRG: GRG-med (RFC_GRG) ("Milliman Care Guidelines") for the stay in a skilled nursing facility."

*Id.* Dr. O'Bannon attached to her recommendation a seven-page, single-spaced Clinical Summary, which provided a monthly synopsis of Catlin's medical care. PRAR RMD002428-34 (Aetna Clinical Summary).

On October 2, 2008, Liberty Mutual issued an 11-page, single-spaced initial appeal determination denying Plaintiff's claim. PRAR RMD002485-543 (Oct. 2, 2008 Letter from Liberty Mutual). In making this decision, Liberty Mutual conducted its own review of the Pre-Remand Administrative Record and considered Dr. O'Bannon's recommendation, the Clinical Summary, the Milliman Care Guidelines, and other relevant documents. Liberty Mutual cited three reasons for denying the appeal.

First, Liberty Mutual determined that the charges did not fall within the covered medical expenses provided by a skilled nursing facility. *Id.* at 4-7. Under the Medical Plan, such charges may be

covered provided that they are related to care provided "within 24 hours following hospital confinement and for the same or related cause(s) as such hospital confinement" or "in lieu of a hospital confinement." *See* PRAR RMD000426-80 (Medical Plan), at B-24 & B-25. According to Liberty Mutual, nothing in the record indicated that Catlin was hospitalized prior to admission to Alden in December 1999 or readmitted to Alden because of, or related to, the causes for her intermittent hospitalizations. Instead, Catlin was admitted and readmitted to Alden solely for long-term care based on her diagnosis of ALS. Additionally, Liberty Mutual determined that its conclusion that Catlin's care was "custodial in nature," not of the type that required "medically necessary skilled services" or could "only be provided in an inpatient setting," were consistent with Dr. O'Bannon's findings and the Milliman Care Guidelines. Although Catlin was "completely dependent on her care-givers at Alden," her care did not require services of a "skilled medical professional," nor was her care primarily provided by such professional at Alden. Catlin's medications, feedings by a percutaneous endoscopic gastronomy tube, and other services were all "clearly related to routine daily care." Alden did not provide "convalescent care" to Catlin; rather, it "primarily [saw] to her long-term comfort, hygiene, and general health needs in a custodial setting." Liberty Mutual cited records from Alden, indicating only a few physician visits during Catlin's stay and that Alden's

nursing staff provided Catlin "routine custodial care, such as feeding, incontinence care, physical therapy, medication maintenance, skin assessment and care, etc."

Second, Liberty Mutual concluded that the claim for benefits was not a covered medical expense because, based on the limited records provided by Plaintiff, *see* PRAR RMD002354-57 (Hosp. Data Website Info. for Alden), Alden does not meet the Medical Plan's definition of a "skilled nursing facility." PRAR RMD002485-543 (Oct. 2, 2008 Letter from Liberty Mutual, at 7-8). Liberty Mutual determined that these records did not demonstrate that Alden has "a physician available at all times" or "24-hour nursing service by Registered Nurses," both required under the definition of "skilled nursing facility" in the Medical Plan. *See* PRAR RMD000426-80 (Medical Plan), at B-23 & B-24.

Third, Liberty Mutual determined that Plaintiff's claim for expenses incurred prior to April 8, 2003 was untimely. PRAR RMD002485-543 (Oct. 2, 2008 Letter from Liberty Mutual, at 8-9). The Medical Plan provides that claims "must be submitted within two years from the date that charges are incurred, unless they are delayed by the claimant's legal incapacity." *See* PRAR RMD000426-80 (Medical Plan), at B-40. Catlin died on July 24, 2004, and Plaintiff inquired about the claim for benefits on April 8, 2005. Liberty Mutual explained that, because Catlin appointed Plaintiff's counsel and other agents to pursue her affairs pursuant to a Power

of Attorney in 1998, Catlin's legal incapacity did not preclude application of the two-year rule.

In its letter, Liberty Mutual assured Plaintiff's counsel that Aetna's role in the post-remand review complied with ERISA regulations and that Liberty Mutual had engaged in its own thorough review of the records prior to issuing its decision. PRAR RMD002485-543 (Oct. 2, 2008 Letter from Liberty Mutual, at 10-11). Finally, citing the "unusual circumstances of this case," Liberty Mutual provided Plaintiff's counsel the opportunity to file a written rebuttal to its decision. "Although such consideration is not required by ERISA, Liberty Mutual believes such a rebuttal opportunity may be appropriate in order to ensure [Plaintiff] receives a full and fair administrative review." *Id.* at 11.

On January 12, 2009, Plaintiff requested reconsideration and provided to Liberty Mutual additional documents and a 20-page memorandum to support its claim. PRAR RMD002673-727 (Jan. 12, 2009 Letter & Mem. from Pl.'s counsel). Liberty Mutual denied this request and affirmed its denial in a 13-page, single-spaced letter. PRAR RMD002612-24 (Mar. 6, 2009 Letter from Liberty Mutual).

On May 19, 2009, this Court granted Plaintiff's motion to lift the stay. Plaintiff then filed an Amended Complaint seeking reimbursement under the Medical Plan for charges incurred at Alden for Catlin's care. Plaintiff claims that she did not receive a full and fair review by Defendants as required by ERISA, *see* 29

U.S.C. § 1133(2), and that Defendants violated their fiduciary duties during the review process.  Plaintiff seeks reimbursement for 100 days per calendar year at the Wausau-negotiated rate of $269.20 per day.  *See* PRAR RMD000426-80 (Medical Plan), at B-14; PRAR RMD002696 (Medical Plan, at 33); PRAR RMD001880 (Dec. 22, 1999 Letter from Wausau).  Plaintiff contends that the charges at issue qualify as charges "in lieu of hospitalization" for accommodations at a "skilled nursing facility" as defined by the Medical Plan and that Liberty Mutual's decision to the contrary was unreasonable. Plaintiff also alleges that Liberty Mutual violated its fiduciary duties as claim administrator by:  (1) engaging Aetna and Defendants' pre-remand attorneys to assist with the post-remand review; (2) assuming an adversarial role against Plaintiff during the review; and (3) refusing to provide Plaintiff with certain communications between Defendants and their attorneys.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56 (c).  A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  *Anderson*, 477 U.S. at 248.  When ruling on cross-motions
for summary judgment, the court "view[s] all facts and draw[s] all
reasonable inferences in a light most favorable to the party
against whom the motion is made."  *Tate v. Long Term Disability
Plan for Salaried Employees of Champion Intern. Corp. No. 506*, 545
F.3d 555, 559 (7th Cir., 2008).  Summary judgment is proper against
"a party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial."  *Celotex
Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

A denial of a claim for benefits under an ERISA plan is
normally reviewed *de novo*; however, when a claimant is denied
benefits under a plan that provides the plan administrator with
clear discretionary authority to determine eligibility for benefits
or to construe the terms of the plan, district courts apply a
deferential standard of review, evaluating a denial of benefits
under the arbitrary-and-capricious standard.  *Leger v. Tribune Co.
Long Term Disability Ben. Plan*, 557 F.3d 823, 831 (7th Cir., 2009);
*Speciale v. Blue Cross and Blue Shield Ass'n,* 538 F.3d 615, 621 n.2
(7th Cir., 2008).  This standard of review is "highly deferential";
the court "look[s] only to ensure that [the plan administrator's]
decision has rational support in the record" and is not "downright
unreasonable."  *Jenkins v. Price Waterhouse Long Term Disability
Plan*, 564 F.3d 856, 861 (7th Cir., 2009).  Courts have "emphasized

the importance of not substituting the court's judgment for that of the plan administrator on the ultimate question of benefits entitlement." *Walsh v. Long Term Disability Coverage for All Employees Located in the United States of DeVry, Inc.*, 601 F.Supp.2d 1035, 1042 (N.D.Ill., 2009). The plan administrator's determination, however, must comply with ERISA's requirements "that specific reasons for the denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review.'" *Leger*, 557 F.3d at 831.

Here, the Medical Plan provides Liberty Mutual, the plan administrator, with discretionary authority for the determination of claims and the interpretation of plan provisions:

> **Authority of the Plan Administrator:** The Plan Administrator, or its designee, has the authority, in its sole discretion, to construe the terms of this Plan and decide all questions of eligibility to participate in the Plan and decide any other matters relating to the administration or operation of the Plan. The Plan Administrator, or its designee, has the authority, in its sole discretion, to determine the amount, time and manner of payment of any benefits under the self-insured plan options. Any such interpretations or decisions of the Plan Administrator shall be conclusive and binding.

PRAR RMD00474 (Medical Plan). Accordingly, the Court will review Liberty Mutual's denial of Plaintiff's claim under the arbitrary and capricious standard of review. *Leger*, 557 F.3d at 831.

Plaintiff argues that Liberty Mutual's determination should be reviewed pursuant to a less deferential standard because Liberty Mutual engaged Aetna, the entity to which Plaintiff originally

submitted her claim, to assist with the post-remand review of the claim. According to Plaintiff, during the post-remand review, Liberty Mutual and Aetna collaborated to oppose her claim and acted as advocates rather than fiduciaries, breaching their duty to give Plaintiff's claim a full and fair review. *See* 29 C.F.R. § 2560.503.1(b)(3) (prohibiting claims procedures from being administered "in a way that unduly inhibits or hampers the initiation of processing of claims for benefits").

"[P]lan administrators have a duty to all plan participants and beneficiaries to investigate claims and make sure to avoid paying benefits to claimants who are not entitled to receive them." *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 575 (7th Cir., 2006). ERISA imposes upon plan administrators "a special standard of care" - the obligation to "'discharge [their] duties' in respect to discretionary claims processing 'solely in the interest of the participants and beneficiaries' of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (quoting 29 U.S.C. § 1104(a)(1)(A)(I)). Plan administrators also must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133(2).

The Court rejects the argument that Aetna's involvement in the post-remand appeal necessarily demonstrates impropriety or any violation of fiduciary duties. As claims administrator, Aetna's

role entails independently reviewing medical claims and making determinations that are appealable to Liberty Mutual, the plan administrator, who handles appeals and pays on claims. Aetna does not have an inherent conflict of interest in this matter because it did not make the final determination, nor is it responsible for paying claims. *See Leger,* 557 F.3ed at 831.

Instead, the record shows that the claims procedure employed by Liberty Mutual complied with ERISA regulations. *See* 29 C.F.R. § 2560.503-1(h)(1)(requiring plan administrators to "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination . . . and under which there will be a full and fair review of the claim and adverse benefit determination"). Aetna began the initial review of Plaintiff's claim prior to this litigation but made no claims determination at that time. During post-remand review, Liberty Mutual specifically prohibited Aetna employees who had previously worked on Plaintiff's claim, or their subordinates, from assisting with the post-remand review. *See* 29 C.F.R. § 503.1(h)(3)(ii). Liberty Mutual relied on the assistance of a medical expert from Aetna, Dr. O'Bannon, to weigh in on issues involving "medical judgment." *See* 29 C.F.R. § 2560.503-1(h)(3)(iii); *see also Davis*, 444 F.3d at 575-77 (plan administrator may rely on the professional opinion of a doctor that it retains after the doctor reviews and evaluates a claimant's medical records); *Leger*, 557 F.3d at 832

(same).  After receiving Aetna's recommendation that Liberty Mutual deny Plaintiff's claim, conducting its own review of the record, and issuing its denial, Liberty Mutual provided Plaintiff an additional opportunity (not required by ERISA regulations) to submit a request for reconsideration in order to ensure a full and fair review.  Plaintiff has pointed to no evidence suggesting that Aetna employees were biased toward Liberty Mutual or engaged in anything other than a fair claim determination; nor has Plaintiff demonstrated impropriety on the part of Liberty Mutual.

Furthermore, even though Liberty Mutual was operating under a conflict of interest when reviewing Plaintiff's claim, the standard of review does not change.  An unavoidable conflict of interest exists when a plan administrator has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due.  *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348 (2008); *Jenkins*, 564 F.3d at 861.  District courts, however, do not abandon the deferential standard of review with respect to benefit determinations, but simply must consider the plan administrator's conflict as one of the relevant factors in determining whether the denial of benefits was arbitrary and capricious.  *See id.*; *Leger*, 557 F.3d at 830-31.  Additionally, courts must "presume neutrality unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict."  *Davis*, 444 F.3d at 575.

Thus, based on the governing law and the record in this case, the Court will review Plaintiff's claim under a deferential standard of review and find against Liberty Mutual only if it appears that the denial of benefits was "downright unreasonable." *See Jenkins*, 564 F.3d at 861. The Court will consider Liberty Mutual's conflict of interest as a factor, among others, in its determination as to whether its decision was arbitrary and capricious. *Leger*, 557 F.3d at 830-31.

## II. **DISCUSSION**

In determining whether Liberty Mutual's decision to deny Plaintiff's claim for benefits was arbitrary and capricious, the Court looks to whether "specific reasons for denial were communicated to [Plaintiff], whether [Plaintiff] was afforded an opportunity for full and fair review by [Liberty Mutual], and whether there is an absence of reasoning to support [Liberty Mutual's] determination." *Id.* at 832-33 (internal citations omitted). The Court must uphold Liberty Mutual's decision "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Speciale*, 538 F.3d at 621.

In this case, in correspondence dated October 2, 2008 and March 6, 2009, Liberty Mutual informed Plaintiff's counsel that it concurred with Aetna's recommendation that Plaintiff's claims be denied and was denying Plaintiff's appeal. Liberty Mutual based this conclusion on Dr. O'Bannon's opinion and its own review of the records. The Court now finds that Liberty Mutual provided independent, reasonable explanations for this conclusion, each based on the record, and that Liberty Mutual based its decision on reasonable interpretation of the provisions of the Medical Plan. *See Speciale*, 538 F.3d at 621.

First, it was not "downright unreasonable" for Liberty Mutual to conclude that the claims related to Catlin's care at Alden did not fall within the coverage provided under the Medical Plan because the charges incurred were "custodial in nature" instead of "in lieu of hospital confinement." *See Jenkins*, 564 F.3d at 861. In reaching this conclusion, Liberty Mutual reasonably interpreted the definitions of "skilled nursing facility" and "custodial care" and determined that the Medical Plan does not cover care for "routine maintenance or support care" that could be provided for someone other than a "skilled medical professional." Liberty Mutual acknowledged that Catlin required constant care, including feedings and the administration of medications; however, this care did not need to be administered by a medical professional, nor does the evidence suggest that it was provided by such professionals at

Alden.    This  conclusion  echoed  the  recommendation  made  by  Dr.
O'Bannon,  who  analyzed  the  record  as  an  outside  expert  and
concluded  that  the  services  rendered  to  Catlin  were  "custodial  in
nature."    Based  on  its  detailed  explanation,  the  Court  finds  that
Liberty  Mutual's  determination  that  the  overall  nature  of  Catlin's
care  at  Alden  was  "custodial"  and  "not  in  lieu  of  hospitalization"
is  rational  and  is  supported  by  the  record.    *See Jenkins*,  564  F.3d
at  861;  *see also Samaritan Health Center v. Simplicity Health Care*
*Plan*,  516  F.Supp.2d  939,  954-55  (E.D.Wis.,  2007).

Additionally,  Plaintiff  has  pointed  to  no  evidence  supporting
her  argument  that  Catlin  was  admitted  to  Alden  within  24  hours  of
hospitalization  and  for  the  same  or  related  causes  as  such
hospitalization.    In  its  denial  letter,  Liberty  Mutual  asserted
that  such  evidence  does  not  exist,  and  thus  concluded  that
Plaintiff's  claim  for  benefits  could  not  rest  on  this  provision.
The  Court  finds  that,  based  on  its  review  of  the  record,  this
conclusion  was  not  unreasonable.    The  PRAR  includes  records  of  a
few  hospitalizations  during  Catlin's  stay  at  Alden,  but  the  Court
has  seen  no  evidence  indicating  that  Catlin  was  hospitalized
immediately  prior  to  her  original  admission  at  Alden  or  that  Catlin
was  readmitted  to  Alden  based  on  the  same  or  related  causes  as  a
hospitalization.    Instead,  the  record  confirms  Liberty  Mutual's
conclusion  that  Catlin  was  admitted  and  later  readmitted  to  Alden
for  care  related  to  her  ALS  diagnosis.

Accordingly, with respect to Liberty Mutual's first reason for denying the claim - that Alden's charges were not a covered expense under the provision relating to charges made by a skilled nursing facility - the Court finds that Liberty Mutual "offered a reasonable explanation, based on the evidence" for its decision and based its decision on "a reasonable explanation of relevant plan documents" and "consideration of the relevant factors that encompass the important aspects of the problem." *See Speciale*, 538 F.3d at 621.

Second, as a separate reason for upholding the denial of benefits, Liberty Mutual concluded that documentation provided by Plaintiff failed to establish that Alden qualified as a "skilled nursing facility" under the terms of the Medical Plan. Based on the documents before it on remand, Liberty Mutual determined that there was no evidence that Alden provides for the availability of a physician at all times or for 24-hour nursing service by registered nurses, both required under the Medical Plan's definition of "skilled nursing facility." The Court now finds that this determination is supported by the limited documents in the record and was not unreasonable. *See Jenkins*, 564 F.3d at 861.

Finally, although it does not impact the Court's overall findings, the Court finds that Liberty Mutual's conclusion regarding the timeliness of Plaintiff's claims for charges incurred prior to April 8, 2003 was reasonable based on the terms of the

Medical Plan.  The evidence shows that the claimed expenses were incurred and paid on a monthly basis beginning in December 1999, and that Plaintiff first submitted a claim for benefits on April 8, 2005.  The Medical Plan expressly requires that medical claims be submitted within two years from the date that charges are incurred.  The Plan makes an exception for delays based on the claimant's legal incapacity.  Through a Power of Attorney executed in 1998, Catlin conferred upon agents complete authority to act on her behalf, including the authority to submit claims to insurers for benefits.  According to Liberty Mutual, this delegation of authority prevents Plaintiff from asserting that her delay should be excused due to Catlin's incapacity.  The Court finds that this interpretation of the Medical Plan and Liberty Mutual's application of its interpretation to these facts was reasonable.

Given the highly deferential standard of review and the thorough review of the evidence upon which Liberty Mutual based its decision, the Court cannot say that Liberty Mutual's decision was "downright unreasonable."  *See Speciale*, 538 F.3d at 623.  The Court's review "is limited to the reasons given by the plan administrator and does not extend to reweighing evidence."  *Id.* The Court hereby finds that Liberty Mutual reasonably interpreted the relevant provisions of the Medical Plan and made a determination that has "rational support in the record."  *See Jenkins*, 564 F.3d at 861.

On the record, Plaintiff has failed to demonstrate that there is a genuine issue of triable fact with respect to the reasonableness of Liberty Mutual's decision to deny her claim. Additionally, Plaintiff has pointed to no evidence suggesting that either Liberty Mutual or Aetna violated the duties imposed upon them by ERISA to afford Plaintiff a full and fair review of her claim. The Court, therefore, finds that Defendants are entitled to entry of summary judgment in their favor.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion for Summary Judgment is **granted**, and Plaintiff's Motion for Summary Judgment is **denied**.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 8/26/2009